# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3056

_____

Aziza Abdelwase,                               *
                                               *
                  Petitioner,                  *
                                               *   Petition for Review of an
            v.                                 *   Order of the Board of
                                               *   Immigration Appeals.
Alberto Gonzales, Attorney General             *
of the United States of America,               *
                                               *
                  Respondent.                  *

_____

Submitted:  February 15, 2007
Filed: August 7, 2007

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Petitioner Aziza Abdelwase, a citizen of Eritrea who has never lived in that country, entered the United States in 1999 on a temporary visa. Removal proceedings commenced after she applied for asylum, withholding of removal, and relief under the Convention Against Torture. The Immigration Judge (IJ) denied relief and ordered Abdelwase removed to Eritrea. She filed a timely administrative appeal, but the Board of Immigration Appeals (BIA) refused to accept her untimely appeal brief and affirmed the IJ's decision without opinion. Abdelwase petitions for judicial review of the final agency action. Concluding that substantial evidence on the administrative record as a whole supports the IJ's decision, we deny the petition.

Abdelwase first argues that the BIA abused its discretion and violated her right to due process when it refused to accept a brief that was untimely filed due to the excusable neglect of her attorney or a third party courier. The applicable regulation provides that, "In its discretion, the [BIA] may consider a brief that has been filed out of time." 8 C.F.R. § 1003.3(c)(1). Here, Abdelwase submitted an untimely brief nearly one year after the IJ's decision. The BIA refused to accept the brief but did not dismiss the administrative appeal on the procedural ground that a timely appellate brief was not filed, as the regulations authorize. See 8 C.F.R. § 1003.1(d)(2)(E). Instead, two months later, the BIA issued an order affirming the IJ without opinion in accordance with 8 C.F.R. § 1003.1(e)(4)(ii). When the BIA affirms without opinion, the IJ's decision is the final agency action for purposes of judicial review. See Aden v. Ashcroft, 396 F.3d 966, 967 n.1 (8th Cir. 2005). Thus, the untimely brief and the BIA's refusal to consider that brief had no bearing on the final agency action we are reviewing. In these circumstances, Abdelwase was not "actually prejudiced" by the alleged lack of due process. Briones-Sanchez v. Heinauer, 319 F.3d 324, 327 (8th Cir. 2003).

Abdelwase next argues that the IJ abused her discretion by finding Abdelwase ineligible for asylum and withholding of removal. The Attorney General has discretion to grant asylum to a refugee, defined as an alien who is unwilling or unable to return to her country of nationality because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, political opinion, or membership in a social group. See 8 U.S.C. §§ 1101(a)(42)(A); 1158(b)(1)(A). An alien may be granted withholding of removal to a particular country if she shows a clear probability of persecution on account of a protected ground. 8 U.S.C. § 1231(b)(3)(A). We review the IJ's decision for abuse of discretion on the administrative record as a whole. We must uphold that decision unless Abdelwase presented evidence "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias Zacarias, 502 U.S. 478, 483-84 (1992); see 8 U.S.C. § 1252(b)(4).

The IJ found that Abdelwase's parents were born in the part of Ethiopia that later became Eritrea and fled Ethiopia before she was born. Abdelwase was born and raised in Saudi Arabia. She has never been to Eritrea or Ethiopia. When her father's employment in Saudi Arabia ended in early 1998, Abdelwase's family returned to Addis Ababa, Ethiopia, but she remained in Saudi Arabia to finish high school. After graduating, she tried to renew her family's Ethiopian passport and return to Ethiopia, but the Ethiopian embassy in Riyadh refused to renew the passport because of her Eritrean nationality. In mid-1998, Abdelwase obtained an identification card and Eritrean passport from the Eritrean embassy in Riyadh, but she remained in Saudi Arabia working for a royal family. Her mother told her that her father was arrested in Addis Ababa and deported to Eritrea. (The administrative record includes reports confirming that Ethiopia deported many Eritrean nationals during this period. They were generally welcomed in Eritrea.) Abdelwase accompanied the royal family to the United States in August 1999, traveling on a Saudi Arabian visa. Upon arriving in New York, she escaped and was invited to live with a cousin in Minnesota.

Abdelwase's asylum claim is premised on her membership in the minority Jeberti ethnic group and her father's membership in the Eritrean Liberation Front (ELF), a political group opposed to the political party governing Eritrea. A friend of her father named Sallhdin told Abdelwase that he and her father were arrested and imprisoned by Eritrean authorities in April 1999. She fears removal to Eritrea because Sallhdin, who was released after a brief detention and fled to Holland, warned Abdelwase that she should not return to Eritrea for fear of retribution due to her father's position in the ELF and her status as a Jeberti. Abdelwase has not heard from her father, and she is unsure if her mother and siblings remain in Ethiopia or have been deported to Eritrea. She declined to designate a country of removal.

The IJ denied all relief, finding that Abdelwase's claims are not credible and she failed to show a well-founded fear of persecution on account of her father's membership in the ELF or her membership in the Jeberti ethnic group. The IJ noted

that Sallhdin was the only source of Abdelwase's testimony that her father was arrested and may still be imprisoned in Eritrea. She presented no documentary evidence corroborating her father's arrest or his membership in the ELF. Her last contact with Sallhdin was in the summer of 2001. She made no further effort to contact him in Holland and has not asked any international organization to help find her family. Abdelwase was granted an Eritrean passport and has suffered no past persecution in Eritrea, where she has never lived. She is not a member of the ELF. The record reflects that many ELF members have returned safely to Eritrea, and some have joined government departments. Likewise, Abdelwase presented no evidence of recent harassment of members of the Jeberti ethnic minority in Eritrea.[1] Thus, the IJ found, Abdelwase's claims of a well-founded fear of future political or ethnic persecution in Eritrea are not credible.

Adverse credibility findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Turay v. Ashcroft, 405 F.3d 663, 668 (8th Cir. 2005), quoting 8 U.S.C. § 1252(b)(4)(B). Abdelwase argues that we should reject the IJ's adverse credibility finding because it is not supported by a "specific, cogent reason for disbelief." Aden, 396 F.3d at 968. The IJ's finding was based on Abdelwase's failure to present any corroborating evidence that her father was arrested and imprisoned in Eritrea because he is an ELF supporter, or that Eritrean authorities are persecuting the Jeberti minority. The IJ noted that it was reasonable to expect corroboration because the documentary record of current conditions in Eritrea generally undermines these claims. See El Sheikh v. Ashcroft, 388 F.3d 643, 647 (8th Cir. 2004). After careful review, we conclude that the administrative record adequately supports the IJ's adverse credibility finding.

---

[1]An assessment report in the administrative record identifies the Jeberti as "Muslims scattered throughout the Christian Highlands" who practice Islam but observe some Christian customs. The 2001 Department of State Country Report on Human Rights Practices reported "widespread religious tolerance" in Eritrea, except for members of the Jehovah's Witnesses.

Given the adverse credibility finding, the IJ's ultimate finding that Abdelwase is not eligible for asylum must be upheld. Like the Eritrean petitioners in <u>Woldemichael v. Ashcroft</u>, 448 F.3d 1000, 1004 (8th Cir. 2006), Abdelwase "presented no evidence of the particular circumstances she may face if removed to Eritrea, other than evidence that she is cut off from her immediate family, an unfortunate circumstance but one which is not relevant to the persecution inquiry." For the same reason, Abdelwase also failed to meet the more demanding standard for withholding of removal -- a "clear probability" of persecution on account of a protected ground. <u>Turay</u>, 405 F.3d at 667.

Finally, Abdelwase argues that the IJ erred in denying relief under the Convention Against Torture without separately analyzing this claim. However, separate analysis is "required only when there is evidence that the alien might be tortured for reasons unrelated to her claims for asylum and withholding of removal, such as previously deserting the military of the country to which she will be removed." <u>Alemu v. Gonzales</u>, 403 F.3d 572, 576 (8th Cir. 2005). Here, the claim for CAT relief -- that Abdelwase might be tortured to provoke her imprisoned father to provide information about the ELF -- was directly related to her asylum claim. No separate CAT analysis was required.

Accordingly, we deny the petition for review.

_____